## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **RYAN FOY,** | : | |
| **Plaintiff** | : | |
| | : | **CIVIL ACTION NO. 3:08-0055** |
| **v.** | : | |
| | : | **(CAPUTO, D.J.)** |
| | : | **(MANNION, M.J.)** |
| **LUZERNE COUNTY and** | | |
| **MICHAEL SAVOKINAS,** | : | |
| **Defendants** | : | |

### REPORT AND RECOMMENDATION[1]

Pending before the court is the defendants' motion for summary judgment.  (Doc. No. 33).  Upon review of the motion and related materials, it is recommended that the defendants' motion be denied and that the matter be set for trial.

By way of relevant background, on January 8, 2008, the plaintiff initiated the instant civil rights action pursuant to 42 U.S.C. §1983, in which he alleges that he was wrongfully terminated from his position as a Real Estate Deputy in the Luzerne County Sheriff's Office for political reasons in violation of his First Amendment rights. (Doc. No. 1). On March 24, 2008, the plaintiff filed an amended complaint. (Doc. No. 9).

The defendants filed a motion to dismiss the plaintiff's amended complaint, which was denied by order dated March 26, 2009.  (Doc. No. 29).

---

[1]For the convenience of the reader of this document in electronic format, hyperlinks to the court's record and to authority cited have been inserted. No endorsement of any provider of electronic resources is intended by the court's practice of using hyperlinks.

The defendants filed an answer to the plaintiff's amended complaint on April 8, 2009.  (Doc. No. 30).

On April 24, 2009, the defendants filed the instant motion for summary judgment. (Doc. No. 33). A statement of material facts with supporting exhibits followed on April 27, 2009. (Doc. No. 34). On May 4, 2009, the defendants filed a brief in support of their motion for summary judgment.  (Doc. No. 36). After having been granted an extension of time to do so, (Doc. No. 38), on June 1, 2009, the plaintiff filed an answer to the defendants' statement of material facts with exhibits.  (Doc. No. 39). On June 3, 2009, the plaintiff filed a brief in opposition to the motion for summary judgment. (Doc. No. 40). On June 11, 2009, the defendants filed a reply brief with an additional exhibit. (Doc. No. 41).

Summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed.R.Civ.P. 56(c)).

The Supreme Court has stated that:

> ". . . [T]he plain language of Rule 56(c)) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other

> facts immaterial. The moving party is 'entitled to judgment as a matter of law' because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof."

Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986).

The moving party bears the initial responsibility of stating the basis for its motion and identifying those portions of the record which demonstrate the absence of a genuine issue of material fact. Id. The moving party can discharge that burden by "showing . . . that there is an absence of evidence to support the nonmoving party's case." Id. at 325.

Issues of fact are genuine "only if a reasonably jury, considering the evidence presented, could find for the nonmoving party." Childers v. Joseph, 842 F.2d 689, 693-94 (3d Cir. 1988)(citations omitted). Material facts are those which will effect the outcome of the trial under governing law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The court may not weigh the evidence nor make credibility determinations. Boyle v. County of Allegheny, 139 F.3d 386, 393 (3d Cir. 1998). In determining whether an issue of material fact exists, the court must consider all evidence and inferences drawn therefrom in the light most favorable to the nonmoving party. Id. at 393.

If the moving party meets his initial burden, the opposing party must do more than raise some metaphysical doubt as to material facts, but must show sufficient evidence to support a jury verdict in its favor. Id.

As previously set forth by the court, the plaintiff alleges the following in

3

his amended complaint:

      During all relevant times prior to January 7, 2008, the plaintiff was employed by the Luzerne County Sheriff's Office and held the job title of Real Estate Deputy. This position is not a policy-making position and one's political beliefs or associations are not an appropriate requirement for the effective performance of the position. In particular, the official duties and responsibilities of the Real Estate Deputy position consist almost entirely of completing routine paperwork and performing non-discretionary tasks related to the Real Estate Division. The plaintiff, working with three clerks, spent almost all of his time performing routine, non-discretionary functions such as data processing, file preparation, document service, providing information to creditors, preparing cost and fee paperwork, collecting funds, bookkeeping, overseeing title searches, paying associated costs and fees, and processing sheriff's deeds. The plaintiff had no authority to hire or fire any employees and, in fact, never did so. The plaintiff was not authorized to supervise any uniformed staff and, in fact, never did so. The plaintiff's salary of approximately $34,000 per year was not significantly different from the salaries received by rank-and-file Deputy Sheriffs. The plaintiff was not authorized to participate in budget-making process and, in fact, never did so. Moreover, the plaintiff was not authorized to participate in discussions or meetings in which office policy was discussed and, in fact, he never had meaningful input into decision-making concerning office policy, the nature or scope of a major program, or the formulation of plans for the implementation of broad goals. The plaintiff's complaint provides that he never presided over Sheriff's sales, and office policy prohibited the Real Estate Deputy from making changes to rules or procedures applicable to Sheriff's sales. The plaintiff was not authorized to speak on behalf of the Sheriff or other governmental policymakers and, in fact, never did so. Finally, office policy required the plaintiff to perform "as required" the general law enforcement duties of rank-and-file Deputy Sheriffs and, in fact, the plaintiff regularly did so.

      The plaintiff's amended complaint claims that he was well-qualified for the position of Real Estate Deputy and, throughout his employment, fully and competently performed his duties and responsibilities.

      In the November 2007 general election, the plaintiff alleges that defendant Savokinas, a Democrat, was elected County Sheriff after a bitter campaign against incumbent County Sheriff Barry Stankus, a Republican. Throughout the 2007 election

season, the plaintiff, a registered Republican, alleges that he openly supported the candidacy of incumbent Sheriff Stankus. Carl Zawatski, a registered Democrat, is a close political associate of defendant Savokinas. Throughout the 2007 election season, Mr. Zawatski played a prominent role in defendant Savokinas's political campaign operation and regularly appeared with and on behalf of defendant Savokinas at public campaign events.

On January 7, 2008, the plaintiff alleges that defendant Savokinas terminated his employment and immediately replaced him with Mr. Zawatski. The plaintiff alleges that his termination was motivated entirely by political patronage. In particular, the plaintiff alleges that defendant Savokinas acted with the purpose and intent of discriminating against the plaintiff, a perceived political adversary, in order to create a job vacancy for Mr. Zawatski, a close political associate and supporter.

Based upon the above allegations, the plaintiff is asserting §1983 claims of First Amendment violations against defendant Savokinas, in his individual capacity, and against Luzerne County. He is seeking declaratory and injunctive relief, as well as compensatory and punitive damages.

(Doc. No. 28).

In an attempt to refute the allegations set forth in the plaintiff's amended complaint and establish that there are no material issues of fact for trial, the defendants have submitted a statement of material facts, the following of which the plaintiff does not dispute.

The plaintiff began his employment with the Luzerne County Sheriff's Office in May of 2002 as a part-time deputy.

On November 4, 2005, the plaintiff was promoted and his title changed from Deputy Sheriff at a salary of $22,500 to Real Estate Deputy at a salary of $33,800.  Upon receiving his promotion to Real Estate Deputy, the plaintiff was no longer a union employee.

On November 15, 2005, former Sheriff Stankus issued a memorandum to "Ryan Foy, Real Estate Deputy" captioned "Job Description, Real Estate Deputy."

On or about July 24, 2006, the plaintiff completed an Employee Information Sheet on which he identifies himself as the "Deputy Chief[2]."  This information sheet reflects that the plaintiff received a pay raise of 3% raising his salary to $34,814[3].  Moreover, the plaintiff's business card identifies him as "Deputy Chief" of the Luzerne County Sheriff's Department[4].

A staff organizational chart prepared either by Sheriff Barry Stankus or Chief Arthur Bobbouine, as well as the Sheriff's Department telephone directory identifies the plaintiff as the "Assistant Chief[5]."

Memoranda from former Sheriff Barry L. Stankus dated December 7, 2007, on Sheriff's Department letterhead refer to the plaintiff as "Assistant

---

[2]Despite the plaintiff's representation of himself as the Deputy Chief on the Employee Information Sheet, he maintains that he was never promoted to any such position and was the Real Estate Deputy at the time of his termination.

[3]Although the Employee Information Sheet indicates that the 3% increase resulted in a pay of $38,814, as the plaintiff notes, a 3% raise on a $33,800 salary would result in a pay of $34,814, which is the amount reflected on the 2006 log of employee salaries.  (Doc. No. 39, Ex. 6, p. D282).

[4]See n.2.

[5]The plaintiff admits this, but counters that his formal job title was that of "Real Estate Deputy."  Moreover, the plaintiff argues that the organizational chart does not set forth his official job responsibilities.

Chief." Moreover, a Special Duty Time Sheet from the Luzerne County Sheriff's Office for the pay period 12/26/07 to 01/08/08 describes the plaintiff's employee status as "Management.[6]"

The nameplate on the plaintiff's office door identified him as "Ryan Foy, Assistant Chief Deputy."

Under the box headed "Firearms Division" on the referenced organizational chart is the name "Roberts," which refers to Deputy Jennifer Roberts. The plaintiff investigated Ms. Roberts for alleged misconduct on several occasions. In doing so, the plaintiff investigated allegations of misconduct, reported his findings to either Sheriff Stankus or Chief Deputy Bobbouine and, if necessary, wrote up a disciplinary memorandum[7].

On May 1, 2006, the plaintiff wrote a document on Luzerne County Sheriff's letterhead, which reads in relevant part:

    To:       Deputy Jennifer Roberts
    From:     Deputy Chief Ryan Foy
    CC:       Sheriff Stankus, Chief Deputy Bobbouine
    . . .

    RE:  CLEAN - NCIC Usage Investigation
    . . .

    The information you provide, will be reviewed, and the results of
    this investigation will be provided to you in writing. Failure to

---

[6]The plaintiff admits this fact, but argues that the document provides no insight into whether the plaintiff held a "management" position.

[7]The plaintiff adds that he was not authorized to render discipline, but only wrote up the disciplinary memorandums if either Sheriff Stankus or Chief Deputy Bobbouine deemed discipline appropriate.

respond to this memo will result in disciplinary action being taken against you.

Also on May 1, 2006, the plaintiff prepared the following memorandum on Luzerne County Sheriff's letterhead:

To:        Deputy Jennifer Roberts
From:      Deputy Chief Ryan Foy
Cc:        Sheriff Stankus, Chief Deputy Bobbouine, Personnel File

. . .

Re:   Policy Violation Oral Reprimand, Vehicle Key Control

. . .

Let this memo serve as a written notice of oral reprimand. (CBA Article XVII - Discahrge [sic], Demotion, Suspension & Discipline, Section 1 ,C, Step 1)
Continued violation of this policy will result in further disciplinary action.

On May 2, 2006, the plaintiff issued the following memorandum on Luzerne County Sheriff's Letterhead:

To:        Deputy Jennifer Roberts
From:      Deputy Chief Ryan Foy
Cc:        Sheriff Stankus, Chief Deputy Bobbouine, Doug Richards, HR Director, Max Blaskiewicz, Union Liaison, Personnel File

. . .

Re: Policy Violation – Suspension

. . .

You have been given oral and written reprimands pertaining to this policy. This is a blatant and continued violation of the Call-Off Policy.
Let this memo serve as a written notice that management will be seeking to have you suspended . . .
The Sheriff requests that a hearing be scheduled as soon as possible regarding this request for suspension.

8

On May 4, 2006, the plaintiff wrote the following on Luzerne County Sheriff's letterhead:

> To:       Deputy Jennifer Roberts
> From:     Deputy Chief Ryan Foy
> Cc:       Sheriff Stankus, Chief Deputy Bobbouine
> . . .
>
> RE:   CLEAN - NCIC Usage Investigation - Follow-up
> . . .
>
> Upon reviewing your response to my original investigation memo, it appears that you fail to realize the gravity of this investigation.
> . . .
>
> The contents of this investigation should be held in confidence and not discussed with members of the department, because there may be additional department members involved in this investigation. Department members who are not party to this investigation will be subject [sic] disciplinary action for interfering with an official investigation. Any questions regarding department policy related to this investigation should be submitted to the Chief Deputy or me in writing.
>
> As stated previously in the memo dated 05/01/06, the information you provide will be reviewed, and the results of this investigation will be provided to you in writing.  Failure to respond to this memo will result in immediate disciplinary action being taken against you.

On May 16, 2006, the plaintiff issued the following memorandum on Luzerne County Sheriff's Department letterhead:

> To:       Deputy Jennifer Roberts
> From:     Deputy Chief Ryan Foy
> Cc:       Sheriff Stankus, Chief Deputy Bobbouine, Doug Richards, HR Director, Max Blaskiewicz, Union Liaison, Personnel File
> . . .
>
> Re:   Policy Violation – Tardiness – Suspension
> . . .

9

> You have been given oral and written reprimands pertaining to this policy.
> This is a blatant and continued violation.
> Let this memo serve as written notice that management will be seeking to have you suspended . . .
> We are requesting that a hearing be scheduled as soon as possible regarding this request for suspension.

In addition to the above, the plaintiff investigated an alleged violation of the office appearance policy by Deputy Heather Zawatski and issued a reprimand to her dated October 5, 2007, on Luzerne County Sheriff's Department letterhead, which reads in relevant part:

> To:        Deputy Heather Zawatski
> From:    Asst. Chief Ryan Foy
> . . .
>
> Cc:        Chief Deputy Bobbouine, Sheriff Stankus
> . . .
>
> Re:   Oral Reprimand – Appearance Police [sic]
> Let this memo serve as an oral reprimand . . .
> Continued violation of this policy will result in further disciplinary action.

Further, the plaintiff investigated allegations of work performance issues and issues related to the proper treatment of customers by Mary Ellen Rebo, a civilian clerk who worked at the main desk of the Sheriff's Office.  In doing so, the plaintiff issued a document dated September 20, 2006, on Luzerne County Sheriff's Department letterhead, which reads in relevant part:

> To:        Mary Ellen Rebo, Clerk/Typist II
> From:    Deputy Chief Ryan Foy
> Cc:        Sheriff Stankus, Chief Deputy Bobbouine, Luzerne County Human Resources
> . . .

Re: Oral Reprimand (Written Documentation) – Work
      Performance
Several complaints have been made regarding your work
performance at the Front Counter.
. . .

I will continue to monitor the work at the front counter, and failure
to comply with this order will result in further disciplinary action.
. . .

Subsequently on October 4, 2006, the plaintiff issued the following on

Luzerne County Sheriff's Department letterhead:

To:        Mary Ellen Rebo, Clerk/Typist II
From:      Deputy Chief Ryan Foy
Cc:        Sheriff Stankus, Chief Deputy Bobbouine, Luzerne
           County Human Resources, AFSCME Representative
. . .

Re:   Written Reprimand – Work Performance
In continuing with monitoring your work performance, I have found
that little or no improvement has been made since being given
your oral reprimand on 9/20/06.
. . .

This memo was followed on December 20, 2006, with another which

reads in relevant part:

To:        Mary Ellen Rebo, Clerk/Typist II
From:      Deputy Chief Ryan Foy
Cc:        Sheriff Stankus, Chief Deputy Bobbouine, Doug
           Richards – HR Director, Max Blaskiewicz, Union
           Liaison
. . .

Re:   Disciplinary Action – Suspension/Termination
. . .

You have been given oral and written reprimands pertaining to
this behavior.
This is a continued violation.
Let this memo serve as a written notice that management will be

11

seeking to have you suspended or terminated depending on the
outcome of a disciplinary hearing . . .
We are requesting that a disciplinary hearing be scheduled as
soon as practical.
Any questions that you may have regarding this reprimand may
be submitted to be [sic] in writing.

The undisputed facts further provide that the plaintiff, as one of
approximately seven individuals in the Sheriff's office involved in a project to
establish a new computer database, was the point of contact for receiving
invoices and performing other matters related to the project. The plaintiff
testified that the system only came into use for gun permits during the time he
was there and that it had not been activated for any other purpose. Plans for
the computer system included activating it for other purposes such as real
estate, civil process, protection from abuse orders, warrants and evidence.
The plaintiff approved invoices associated with the computer system in an
amount totaling $46,000.

The Sheriff's Office provided security services for Family Services of
Wyoming Valley.  Thirteen of the fourteen invoices from the Luzerne County
Sheriff's Department to Wyoming Valley Social Services indicate that payment
for the Sheriff's Office work for Wyoming Valley Social Services was to be
sent "to the Attention of Deputy Chief Ryan Foy."  The various invoices list
under Administrative Services hours of time billed by the plaintiff for "billing
and scheduling."

By letter dated December 18, 2007, the plaintiff was notified by then
Sheriff-Elect Savokinas that his employment with the Sheriff's office would not

12

continue beyond January 6, 2008.

Based upon the above facts, in their motion for summary judgment, the defendants initially argue that the plaintiff is not protected by the First Amendment because he was the Deputy Chief, Assistant Chief Deputy, a member of the former Sheriff's management team, a confidant of the former Sheriff, and a policy-maker under the former Sheriff.  (Doc. No. 36, pp. 6-21).

As previously set forth by the court, with the exception of those in "policy-making" positions, an employee's freedom of association rights under the First Amendment are infringed by dismissal of the employee for partisan reasons. See Elrod v. Burns, 427 U.S. 347 (1976). This exception was refined in Branti v. Finkel, 445 U.S. 507 (1980), in which the Court held that "the ultimate inquiry is not whether the label 'policymaker' or 'confidential' fits a particular position; rather the question is whether the hiring authority can demonstrate that party affiliation is an appropriate requirement for the effective performance of the public office involved." It is the defendant that bears the burden of proving that party affiliation is an appropriate requirement for the effective service of the public office in question. Laskaris v. Thornburgh, 733 F.2d 260, 265 n.4 (3d Cir. 1984), cert. denied, 469 U.S. 886 (1984). In deciding the issue, the court should focus on the public office in question, not on the actual past duties of the particular employee involved. Wetzel v. Tucker, 139 F.3d 380, 384 (3d Cir. 1998). However, evidence relating to actual past duties may be considered as informative. Id.

13

In Brown v. Trench, 787 F.2d 167 (3d Cir. 1986), the Third Circuit set forth several factors to be considered in deciding whether political affiliation is an appropriate pre-condition for a government position, including whether the employee has duties that are non-discretionary or non-technical, participates in discussions or other meetings, prepares budgets, possesses authority to hire and fire other employees, has a high salary, retains power over others, and can speak in the name of the policymakers. Id. at 169. See Galli v. New Jersey Meadowlands Comm'n, 490 F.3d 265, 271 (3d Cir. 2007).

Considering the above factors, the court believes that there are material issues of fact in this case as to whether political affiliation was an appropriate pre-condition for the plaintiff's position.

Initially, the court notes some discrepancy in the record as to what exactly was the position which the plaintiff held at the time of his termination. The plaintiff indicates that at the time of his termination he was simply the Real Estate Deputy. This title is reflected on a Notification of Change of Employee Status dated November 4, 2005, as well as on paperwork completed by the Human Resources department regarding the plaintiff's termination in January of 2008. However, on various other documents in the record, the plaintiff refers to himself and is referred to by others as "Deputy," "Assistant Chief," "Deputy Chief," and "Deputy Chief/Real Estate Deputy." Whatever his official title was within the Sheriff's Office, although the plaintiff would claim to the contrary, it seems clear from the record that at the time of

his discharge the plaintiff was in a management position within the Sheriff's Office.  To this extent, his pay slips from late 2007 and early 2008 reflect that he was receiving management wages.  Moreover, a memorandum issued to the plaintiff in 2008 from Sheriff Stankus reflects that the plaintiff would receive "management" leave time.  Finally, a special duty time sheet from 2008 reflects the plaintiff's employment status as "management."

Even with a management position, however, as observed in <u>Brown</u>, managerial or supervisory authority, by itself, does not suffice to bring a position within the <u>Branti-Elrod</u> exception. <u>See</u> Brown, 787 F.2d at 169-70. Simply to label someone a manager says nothing about whether or not that person has significant policy-making responsibilities that make adherence to the incumbent party's political philosophy a necessary job requirement.

To make this determination, the court considers the factors set forth in <u>Brown</u>, several of which are related for purposes of the instant action.  Citing to the above-referenced disciplinary memorandums, the defendants argue that the plaintiff exercised extensive discretionary functions.  The defendants also argue that the plaintiff administered discipline across various sections of the Sheriff's Office and issued memoranda directly to employees' personnel files. The defendants further argue that the plaintiff's position allowed him to supervise and retain power over various employees and that he spoke in the name of the Sheriff by doing so. As the "enforcer of Department personnel policies," the defendants argue that the plaintiff was clearly in a confidential

and policy-making position.

The plaintiff has testified, however, that his role in the disciplinary process was limited to investigating allegations of misconduct, reporting his findings to either Sheriff Stankus or Chief Deputy Bobbouine and, if directed to do so by either of them, writing up a disciplinary memorandum. Independently, the plaintiff claims that he had no authority to take disciplinary action against other employees. The extent of his power over other employees is therefore in question. Further, there is no evidence in the record, that the plaintiff had the ability to hire or fire other employees. There is, therefore, a material issue of fact with respect to whether the plaintiff possessed sufficient discretion under these factors so as to bring him within the exception of First Amendment protection.

The defendants further argue that the plaintiff had budgetary authority as evidenced by his authority to approve invoices for the computer database project. In considering this argument, while there is evidence in the record that the plaintiff had the authority to sign for invoices for services approved under the budget, there is no evidence in the record that the plaintiff was actively involved in preparing budget for the Sheriff's Office. This factor therefore weighs in favor of the plaintiff.

Next, the defendants argue that the plaintiff's salary was significantly higher than that of other rank and file deputy sheriffs. In considering the plaintiff's salary under the Brown factors, the record does reflect that,

commensurate with his management status, the plaintiff's salary was higher than other rank and file deputies with equitable time[8].  This factor, therefore, weighs in favor of the defendants.

Finally, although the plaintiff issued the above disciplinary memorandums on Sheriff's letterhead, there is no indication that the plaintiff was permitted to speak in the name of the Sheriff or Deputy Chief without prior approval.  As such, this factor also weighs in favor of the plaintiff.

In light of the above, even considering the plaintiff's managerial position, the court finds that there is a material issue of fact as to whether political affiliation was an appropriate pre-condition for the plaintiff's position.

In the alternative, the defendants argue that, even if the plaintiff were merely the Real Estate Deputy, he would still not be protected from discharge. (Doc. No. 36, pp. 21-22).

As outlined in the court's previous report, the relevant County Code provides:

> In counties of the third and fourth classes[9], the sheriff may have a real estate deputy to take charge of all matters relating to sheriff's sales of real estate and distributions of the proceeds thereof, whose appointment shall be made and be revocable as hereinbefore provided for the chief deputy. Such deputy shall have full power to perform all duties incumbent upon the sheriff in like manner as his chief deputy with like effect in law as if such

---

[8]Although the plaintiff indicates that there were at least ten other rank and file deputies earning salaries of at least $30,000, the record reflects that each of these deputies had begun their employment well before the plaintiff.

[9]The parties do not dispute that Luzerne County is a third class county.

17

official acts had been done by the sheriff in person. Such duties shall include the execution and acknowledgment of sheriff's deeds for real estate upon receipt of the purchase price thereof. Nothing in this act shall operate to relieve the sheriff or his sureties from liability upon their official bonds but such liability shall continue as heretofore.

16 P.S. §1204.

Although its language is all-inclusive, the County Code does not set forth what the specific matters are "relating to sheriff's sales of real estate and distributions of the proceeds thereof" over which the Real Estate Deputy is to take charge. Based upon the record before the court, there is a question of fact as to whether one in the position of the Real Estate Deputy is in a policymaking position. Therefore, the defendants' motion for summary judgment should be denied on this basis as well.

Next, the defendants argue that defendant Savokinas is entitled to qualified immunity.  (Doc. No. 36, pp. 22-24).

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Pearson v. Callahan,       U.S.     , 129 S.Ct. 808, 815 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). In Saucier v. Katz, the Supreme Court established a two-step process for courts examining the qualified immunity of government officials.  533 U.S. 194, 201 (2001). "First, a court must decide whether the facts that a plaintiff has alleged (see Fed. Rules Civ. Proc. 12(b)(6),(c)) or shown (see Rules 50, 56) make out

18

a violation of a constitutional right." Pearson, 129 S.Ct. at 815-16 (citing Saucier, 533 U.S., at 201).  "Second, if the plaintiff has satisfied this first step, the court must decide whether the right at issue was "clearly established" at the time of defendant's alleged misconduct." Id. at 816. Recently, in Pearson, the Supreme Court held that "while the sequence set forth [in Saucier] is often appropriate, it should no longer be regarded as mandatory." Id. at 818.

Here, the court believes that there are material issues of fact with respect to the plaintiff's First Amendment claim. Moreover, the court finds that an employee's freedom of association rights under the First Amendment to be free from dismissal for partisan reasons has long been established. See Elrod v. Burns, supra. Therefore, defendant Savokinas is not entitled to qualified immunity and the defendants' motion for summary judgment should be denied on this basis.

Finally, the defendants argue that the plaintiff's claim for punitive damages against defendant Savokinas should be dismissed as a matter of law. The defendants argue that punitive damages are not available under §1983 against local officials in their official capacity. (Doc. No. 36, pp. 24-25).

With respect to this argument, as discussed in the court's prior report, defendant Savokinas is sued in his individual capacity not his official capacity. Therefore, the defendants' motion for summary judgment should be denied on this basis.

On the basis of the foregoing, **IT IS RECOMMENDED THAT:** the defendants' motion for summary judgment, **(Doc. No. 33)**, be **DENIED** and the matter be set for trial at the convenience of the parties and the district judge.


s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States Magistrate Judge**


**Date:**  January 28, 2010

O:\shared\REPORTS\2008 Reports\08-0055-02.wpd